Davis, J.,
delivered tbe opinion of tbe court:
Under tbe last clause of tbe direct tax act of March 2,1891, tbe plaintiffs, as beirs of Jobn Murray, seek to recover tbe purchase price of certain property in Beaufort, S. C., sold for taxes under tbe act of August 26, 1861, and bought in by tbe Government.
Some time after tbe tax sale Murray died intestate, leaving a widow and infant children; later (and before tbe act of 1891) the widow purchased from tbe United States this same Beaufort property.
It is contended by defendants that as tbe Beaufort lot was purchased by tbe widow, plaintiffs’ mother, there can be no recovery under tbe clause of act of 1891, which thus provides:
“That any sum or sums of money received into tbe Treas- - ury of tbe United States from tbe sale of lands bid in for taxes in any State under tbe laws described in tbe first section of this act, in excess of tbe tax assessed thereon, shall be paid to tbe owners of said land so bid in and resold, or to their legal beirs or representatives.”
By tbe tax sale of 1861 all interest of Murray or bis wife in tbe lot was destroyed, so when tbe widow later bought the property from tbe United States her purchase had tbe same effect as that of a third party, or as a purchase by her of some other and quite different property, in which she or her husband bad at no time previously any interest. Tbe land became her sole and individual property, and as she died intestate, her beirs succeed to it (as to any other land owned by her), according to tbe laws of South Carolina, and under her title acquired by the purchase. It is quite immaterial for the purposes of the act of 1891 that, as a matter of fact, the land happens to be the same land as plaintiffs would have inherited from their father had it not been sold for taxes.
In BarmoelVs Case (28 C. Cls. B., p. 246), we said:
“The purposes of this act are beneficent; the intention of Congress was to repair, as far as possible, any injustice occasioned by the operation of the direct tax laws, which, South Carolina, fell with peculiar hardship upon the inhabitants of two parishes, and to accomplish this result it divided the sufferers into several classes: First, those whose lands had been sold for a sum in excess of the tax, and to these it gives the excess over tbe tax of tbe value of the lands, at a certain *369 prescribed rate; second, certain third parties who purchased at the saie, made part payment, and failing payment as to the balance due forfeited their rights. These received the money actually paid to them on account.”
“ But as to the first class it is further provided, that the benefits prescribed in one clause shall not inure to them if ‘ they have purchased their laud from the United States.7 The reason of this is clear. These persons have the lands in their possession. To give them in addition the compensation provided in this clause would, in effect, pay them twice: first in the land, second in the value thereof, as in this section fixed. But it will be noted that while these owners have the lands, and therefore should not also recover the $5 an acre, or half the assessed value, as the case may be, still they have lost the money they actually paid to the United States for the land, and thus they are left the only class of sufferers from the direct tax acts known to this court, not compensated by the act of 1891, should defendants’ contention be correct.
“The clause first above quoted remedies this injustice, and gives to such owners, not ‘compensation7 for the lands purchased, but returns to them the money actually received by the Treasury.77 (Barnwell v. United States, 28 O. 01s. B., 248.)
• If the land had been purchased by a stranger no question could have arisen as to plaintiffs’ right to a judgment herein. There is in the Treasury a fund, the proceeds of the sale of John Murray’s land; the plaintiffs are his heirs; by the tax sale their father’s title, their mother’s dower, and their possibility of inheritance through the father were destroyed, and the mother and widow’s subsequent purchase of the same property as her own independent transaction did not affect any rights which the act of 1891 gives plaintiffs, which are founded upon the tax sale, as they (these heirs) did not redeem or repurchase.
At the time of the tax sale John Murray’s wife and children had no title in the property; dower had not then attached, but was still inchoate, and no heirs could have been disclosed until Murray’s death, which did not, occur until after the sale.
The fact that, after all this tax transaction was ended and all title in the Murray family had been divested, the mother purchased the same land does not affect plaintiffs’ rights herein; for those rights spring from the father’s title at the time of the tax sale, not from any rights which as heirs of the mother they may have afterwards had in the land itself.
Judgment for plaintiffs in the sum of $1,489.